IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

KELVIN LEE MARION, )
)
         Plaintiff, )
)
vs. ) Case No. 06-cv-0799-MJR
)
DARLENE A. VELTRI and )
TIMOTHY ADESANYA, )
)
         Defendants. )

MEMORANDUM and ORDER

REAGAN, District Judge:

A. Introduction

In October 2006, Kelvin Marion filed suit in this District Court under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), alleging violations of his federally-secured constitutional rights while incarcerated at the Federal Correctional Institution in Greenville, Illinois, within this Judicial District.[1]

Marion claims that prison officials were deliberately indifferent to his serious medical needs, thereby contravening the Eighth Amendment's prohibition against cruel and unusual punishment. Marion seeks, inter alia, $100,000 in damages and "lifetime medical treatment" for his feet.

---

[1] *Bivens* held that victims of constitutional violations by federal agents have a right to recover damages against those officials in United States District Courts. *Bivens* is the "federal analog" to lawsuits brought against *state* officials under 42 U.S.C. § 1983. **Hartman v. Moore, 547 U.S. 250, 254 n.2 (2006).**

Marion's initial complaint alleged that from August 9, 2000 to October 17, 2004, prison officials were deliberately indifferent to his medical needs by refusing repeated requests for orthopedic shoes for his "hurting feet, painful swelling, painful corns, painful callouses, painful bunching of toes … and possible permanent foot deformity" (Doc. 1, p. 1).

Marion further alleged that after a cursory examination by a Physician's Assistant ("T. Adesanya") at sick call in January 2003, Marion had to wait over a year to see a foot doctor and was constantly denied the "soft shoes" he needed, all of which forced him to wear ill-fitting boots, endure pain, lose sleep, miss work opportunities, suffer verbal abuse for being "lazy" while not working, and gain roughly 60 pounds (Doc. 1, pp. 3-6).

Marion's July 2007 amended complaint named two Defendants: (1) Darlene Veltri, Warden of FCI-Greenville from January 2003 to February 2005, and (2) Timothy Adesanya, a Physician's Assistant at FCI-Greenville. In December 2007, Marion's amended complaint survived threshold review, and the case was referred to the Honorable Philip M. Frazier, United States Magistrate Judge, for pretrial proceedings. After Defendants were served, had entered or had appeared, Judge Frazier issued a Scheduling Order.

In keeping with that Order, Defendants moved for summary judgment in October 2008. After obtaining an extension of time, Marion timely responded to the motion on January 12, 2009. On February 2, 2009, Judge

Frazier submitted a Report recommending that the undersigned District Judge deny Defendants' summary judgment motion.

Judge Frazier reached this conclusion after resolving two issues against Defendants. First, he rejected Defendants' argument that Marion failed to exhaust administrative remedies on all claims save one, prior to filing this suit. Second, Judge Frazier rejected Defendants' argument that a statute of limitations bars Marion's only exhausted claim. On February 20, 2009, Defendants filed objections to Judge Frazier's Report.

Timely objections having been filed, the undersigned District Judge undertakes *de novo* review of the portions of the Report to which specific objection was made. **28 U.S.C. § 636(b)(1)(B); FED. R. CIV. P. 72(b); Southern District of Illinois Local Rule 73.1(b);** *Govas v. Chalmers*, **965 F.2d 298, 301 (7th Cir. 1992)**. The Court may accept, reject or modify the recommended decision, or recommit the matter to the Magistrate Judge with instructions. **FED. R. CIV. P. 72(b); Local Rule 73.1(b);** *Willis v. Caterpillar, Inc.*, **199 F.3d 902, 904 (7th Cir. 1999)**.

In the case *sub judice*, Defendants object to Judge Frazier's determinations on exhaustion and the statute of limitations. So the task before the undersigned Judge is to freshly review whether summary judgment is warranted on either of those grounds.

B.  Applicable Legal Standards

Summary judgment is appropriate where the pleadings, the discovery and disclosure materials on file, and any affidavits "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." **FEDERAL RULE OF CIVIL PROCEDURE 56(c).**

To defeat summary judgment, the nonmoving party must do more than raise a metaphysical doubt as to the material facts. Instead, she "must come forward with specific facts showing that there is a genuine issue for trial." ***Keri v. Board of Trustees of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006),** *cert. denied*, 549 U.S. 1210 (2007), *citing **Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).**

This Court can find a genuine issue of material fact precluding summary judgment "only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." ***Argyropoulos v. City of Alton*, 539 F.3d 724, 731 (7th Cir. 2008),** *quoting **Sides v. City of Champaign*, 496 F.3d 820, 826 (7th Cir. 2007).** Bearing these standards in mind, the Court assesses the record before it, having carefully reviewed the materials submitted by the parties.

C.  Analysis

The Prison Litigation Reform Act of 1995 ("PLRA") requires prisoners to exhaust administrative remedies before filing suit in federal court.

That requirement applies to suits challenging prison conditions under 42 U.S.C. § 1983, as well as actions under "any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility." **42 U.S.C. § 1997e(a).**

Exhaustion of administrative remedies under the PLRA is a condition precedent to suit in federal court. ***Dixon v. Page*, 291 F.3d 485, 490 (7th Cir. 2002).** The law of this Circuit establishes that the inmate must comply with the rules and procedures governing grievances in the particular institution of incarceration, including any time limitations and *all steps* in a multi-step grievance process.

To properly exhaust remedies within the meaning of the PLRA, the inmate "must file complaints and appeals in the place, and at the time, the prison's administrative rules require." ***Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). See also *Burrell v. Powers*, 431 F.3d 282, 248 (7th Cir. 2005).** If administrative remedies are not properly exhausted prior to commencement of the federal lawsuit, the district court must dismiss the suit (or any *claims* not fully exhausted). ***Burrell*, 431 F.3d at 285; *Jones v. Bock*, 549 U.S. 199, 201 (2007).**[2]

Because exhaustion is an affirmative defense, "the burden of proof

---

[2] Dismissal is without prejudice. ***Burrell*, 431 F.3d at 285, *citing Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002) ("Dismissal for failure to exhaust is without prejudice ...."); and *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004)("all dismissals under § 1997e(a) should be without prejudice").**

is on the prison officials." **Kaba v. Stepp**, **458 F.3d 678, 680 (7th Cir. 2006)**. **Accord Brengettcy v. Horton**, **423 F.3d 674, 682 (7th Cir. 2005)**. So, here, Defendants bear the burden of demonstrating that Marion failed to exhaust all available administrative remedies before filing this suit. **Kaba, 458 F.3d at 681, citing Dole v. Chandler**, **438 F.3d 804, 809 (7th Cir. 2006)**. Additionally, the undersigned Judge draws all reasonable inferences in the light most favorable to Marion, the nonmoving party on summary judgment. *Id.*, **citing Jenkins v. Yager**, **444 F.3d 916, 921 (7th Cir. 2006)**.

Marion's amended complaint (Doc. 9) alleged that Defendants denied him "medical attention towards my medical needs." In the amended complaint, Marion <u>further alleged as follows</u>:

After waiting four years to see a foot doctor while suffering excruciating pain, Marion was told by the doctor that his claims were "factual" (apparently implying that the doctor credited Marion's belief that his foot ailments resulted from ill-fitting shoes and medical indifference). The doctor prescribed a "soft shoe permit and a follow up" examination (Doc. 9, p. 4). Marion completed all "five steps of the B.O.P. Grievance procedures," with nothing resulting therefrom except a podiatrist appointment "on the fourth step" (Doc. 9, p. 3), and Marion still had not received his follow-up doctor's examination when he filed the July 2007 amended complaint (*id.*, p. 4).

In their summary judgment motion, Defendants maintained that

the only claim exhausted by Marion was his request for soft shoes, and they assert that this claim was filed *after* the applicable statute of limitations elapsed.

The parties agree that a two-year statute of limitations governs and that the limitations period is tolled while the inmate exhausts administrative remedies. ***Delgado-Brunet v. Clark***, **93 F.3d 339, 342 (7th Cir. 1996)("Bivens actions, like § 1983 actions, are considered as personal injury claims" and "governed by the personal injury statute of limitations and tolling laws of the state where the alleged injury occurred.");** ***Jackson v. Kotter***, **541 F.3d 688, 699 (7th Cir. 2008)(applying state's 2-year personal injury limitations period to Bivens claim);** ***Klebanowski v. Sheahan***, **540 F.3d 633, 639 (7th Cir. 2008)(recognizing that 2-year limitations period is tolled during pendency of inmate's grievance proceedings);** ***Johnson v. Rivera***, **272 F.3d 519, 521-22 (7th Cir. 2001)(holding that statute of limitations is tolled while prisoners pursue administrative remedies).** Analysis turns to what claims Marion fully exhausted prior to filing this lawsuit.

The federal Bureau of Prisons ("BOP") has a detailed administrative remedy procedure through which inmates may lodge complaints relating to any aspect of their confinement. This multi-step process is set forth in the Code of Federal Regulations at 28 C.F.R. § 542.10 - § 542.18. ***See Kaba***, **458 F.3d**

at 681 (7th Cir. 2006)(each step of the process has a "prescribed deadline and a particular grievance form" which must be used).

First, inmates must attempt to informally resolve their complaint by presenting the issue to staff, "and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy." **28 C.F.R. § 542.13.** A "BP-8" form is used for this step.

Second, if informal efforts fail, the inmate may file a formal complaint with the Warden (on form "BP-9") within 20 days of the date on which the complained-of activity occurred. Additional time is allowed for this step, if the inmate demonstrates a valid reason for delay. **28 C.F.R. § 542.14.**[3] The Warden has 20 days to respond to the inmate's complaint. *Id.*

If the inmate is dissatisfied with the Warden's response, he can appeal to the Regional Director/Regional Office via "BP-10" form submitted "within 20 calendar days of the date the Warden signed the response." **28 C.F.R. § 542.15.** The Regional Director has 30 days to respond.

If the inmate is not satisfied with the Regional Director's response, he can "within 30 calendar days of the date the Regional Director signed the response," file a final appeal with the General Counsel via "BP-11" form mailed to the National Inmate Appeals Administrator, Office of General Counsel. **28**

---

[3] Inmates are told to place only a single complaint "or a reasonable number of closely related issues" on the informal resolution form. **28 C.F.R. § 542.14(c)(2).**

**C.F.R. § 542.15 and § 542.18**. The inmate's receipt of the General Counsel's response to his BP-11 completes the administrative process.

In the instant case, Marion attached the various BP forms he submitted (as well as copies of responses thereto) to his initial complaint. Additionally, Defendants furnished a copy of Marion's entire 19-page administrative record with their summary judgment motion. That record discloses the following.

On January 18, 2004, Marion complied with the first step in the BOP administrative remedy process by submitting an informal resolution form (his BP-8) in which he complained: "I need a soft shoe permite [sic], my feet hurt from these work boots and the Commissary Gym Shoes constantly" (Doc. 33-3, p. 25).

Marion took step two in the prescribed BOP process on January 22, 2004 by timely filing a formal complaint via BP-9 form (RECEIVED-stamped in the Warden's office January 27, 2004) which stated: "I'm asking for a soft shoe permite [sic]" and then spelled out four reasons for his request, including the fact that boots specially ordered for him "still hurt," were "not wide enough" and were damaging his feet (Doc. 33-3, p. 26).

On February 6, 2004, Warden Veltri responded (Doc. 33-3, p. 27) that the Health Services Administrator had advised her that Marion's request for soft shoe permit was denied by the medical duty status committee in 2003,

but if he felt his condition had changed since then to warrant the soft shoe permit, Marion could attend sick call. The February 6, 2004 response concludes that Marion's "request for Administrative Remedy is denied," and if dissatisfied with the denial, Marion should appeal to the Regional Director within 20 days (*id.*).

Marion took step three on February 17, 2004 by timely filing a BP-10 form with the Regional Director referencing his attempts to "make the medical staff afford me an appointment with a foot doctor" (Doc. 33-3, p. 28) On April 9, 2004, the Regional Director responded (Doc. 33-3, p. 29), concluding that his review "found no basis to substantiate your allegation," that it appeared staff "have been attentive to your concerns," and it "is our understanding that your name has been placed on the list to see the contract orthopedist." Marion was advised that if he was dissatisfied with this response, he could appeal to the Office of General Counsel in Washington, DC within 30 days (*id.*).

On May 5, 2004, Marion followed the fourth step, submitting the BP-11 appeal form reiterating his request for a soft shoe permit based on various foot problems (flat feet, high in-step, ill-fitting boots, corns, a callus, tender ball of foot, etc.). He complained that if any of the physician assistants or nurses "would look at my feet visually instead of trying to diagnose from what I write to them or say to them, I would be treated..." (Doc. 33-3, p. 31).

The National Inmate Appeals Administrator responded on June 28, 2004 (Doc. 33-3 p. 30), acknowledging Marion's complaint, noting that "Discussion with FCI Greenville medical staff reveals you were evaluated on April 22, 2004," that an appointment with a contract podiatrist "has been scheduled and will take place in the near future," and concluding that medical staff "will continue to assess, evaluate, and monitor your condition."

Clearly, Marion exhausted all available administrative remedies as to his claim based on the prison's failure to promptly provide him a soft shoe permit. That claim is plainly set forth on Marion's BP-8 form, and he took all possible appeals from the adverse rulings on his request for the soft shoe permit. The issue is whether Marion exhausted a deliberate indifference claim based on anything *other than* the soft shoe request (*i.e.*, whether Marion exhausted a claim for denied or delayed medical attention by a podiatrist or orthopedist). The undersigned Judge concludes that Marion did not.

The administrative remedy process anticipates that inmates will use separate forms for separate claims. **See 28 C.F.R. § 542.14(c)(2) (indicating that inmates should list only a single complaint "or a reasonable number of closely related issues" on the informal resolution form).** FCI-Greenville's form instructs inmates to briefly "state ONE complaint below" and list the efforts they have made toward informal resolution of that complaint (*see* Doc. 33-3, p. 25).

Complying with these instructions, Marion (who filed only one Administrative Remedy Informal Resolution Form or "BP-8") elected to list this single complaint: "I need a soft shoe permite [sic], my feet hurt from these work boots & the Commissary Gym Shoes, constantly" (*id.*).

Similarly, on his BP-9, Marion reiterated: "I'm asking for a soft shoe permite [sic] for the following reasons" (and then discussed how the work boots were damaging his feet and he had not been able to special order soft shoes, etc.)(Doc. 33-3, p. 26). Warden Veltri's February 6, 2004 response likewise describes Marion's request for administrative remedy as "you state that you want soft shoes" (Doc. 33-3, p. 27).

When Marion filed the BP-10 appealing from Warden Veltri to the Regional Director, he interjected a reference to "trying to make the medical staff afford me an appointment with a foot doctor" because of an ongoing problem that "lacks the utmost medical attention" (Doc. 33-3, p. 28). The claim for an appointment with a "foot doctor" was not on Marion's BP-8 or BP-9.

After the appeal to the Regional Director proved unfruitful, Marion filed a BP-11 which mirrored his earlier submissions (the BP-8 and BP-9), focusing on the request for a permit to wear soft shoes – "I'm asking for a soft shoe permit" – and buttressing that request with discussion of his corns, a callus, and a "little toe that is starting to underlap the next toe" (Doc. 33-3, p.

31).⁴

FCI-Greenville's refusal to promptly issue Marion a soft shoe permit is the sole grievance that was fully exhausted. That conclusion is not changed by the fact the Central Office summarized Marion's complaint in broader terms in response to Marion's BP-11: "You allege insufficient medical care to address your foot condition. You request a soft shoe permit *and to be evaluated by a contract orthopedist*" (Doc. 33-3, p. 30, emph. added).

Any claim for failure to provide orthopedic examination or treatment was not included in Marion's BP-8 or BP-9, so FCI-Greenville officials never had the appropriate chance to address it at the initial level. The Seventh Circuit has emphasized the importance of this chronology, citing the Supreme Court decision in ***Woodford v. Ngo*, 548 U.S. 81 (2006)(emphasis added)**:

> A centerpiece of the PLRA's effort to reduce the quantity … of prisoner suits is an "invigorated" exhaustion provision…. The PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus **seeks to afford corrections official time and opportunity to address complaints internally** before allowing the initiation of a federal case.

***Kaba*, 453 F.3d at 682-83, *citing Woodford*, 548 U.S. at 93.**

After closely reviewing the ample record, the undersigned Judge

---

⁴ One sentence of this form criticizes the nurses and physician's assistants who examined Marion at sick call for not giving him a thorough visual foot inspection. But that does not equate to a claim for failure to *provide an appointment with an orthopedist or podiatrist*.

agrees with Defendants that the only claim Marion fully exhausted was the claim listed in his BP-8 and BP-9 forms, the claim based on refusal to provide a soft shoe permit.[5]

The claim based on Defendants' failure to provide an orthopedic examination was not exhausted. Marion's amended complaint contains deliberate indifference claims based on *both* the delay in issuing the soft shoe permit *and* the failure to provide a "follow-up" examination with a "foot doctor." To the extent the Report concluded that Marion's lawsuit is based only on the soft shoe claim or that the soft shoe claim equates to a broader deliberate indifference claim, the undersigned Judge disagrees and rejects the Report.

Marion's lawsuit presents two *distinct* (albeit related) deliberate indifference claims, one for failure to promptly provide the soft shoe permit (a claim which Marion fully exhausted) and one for delay in providing examination by a "foot doctor" (a claim which was not properly exhausted). Defendants' rightly contend that Marion can proceed herein only on the exhausted claim. Defendants' summary judgment motion, however, asks for the wrong relief: the entry of summary judgment on, or the *with prejudice* dismissal of, all

---

[5] Marion did receive the permit and the shoes in the fall of 2004. The documents Marion furnished herein establish that he was seen by a contract podiatrist on October 17, 2004, the podiatrist identified a callus that had been aggravated by steel-toed shoes, the podiatrist recommended a soft shoe permit, and Marion was issued soft shoes on November 17, 2004. *See* Exh. D-1 and F-1 to Doc. 33.

unexhausted claims. The caselaw cited above (**see, e.g., Burrell**) makes plain that any unexhausted claims must be dismissed without prejudice.

To recap, this Court determines that Marion exhausted all administrative remedies on his claim relating to refusal to provide (or delay in providing) a soft shoe permit. That is the only claim properly advanced in this lawsuit under the PLRA's strict exhaustion requirement. Defendants insist that claim is barred by the statute of limitations.

As discussed above, a two-year limitations period governs inmate deliberate indifference claims. State law supplies the limitations period and tolling rules for prisoner lawsuits, but federal common law answers the question when the limitations period *begins to run* (the question of accrual). **Heard v. Sheahan, 253 F.3d 316, *319* (7th Cir. 2001), *citing Wilson v. Garcia*, 471 U.S. 261, 275 (1985); Sellars v. Perry, 80 F.3d 243, 245 (7th Cir. 1996); Wilson v. Giesen, 956 F.2d 738, 740 (7th Cir. 1992).**

In **Heard**, the Seventh Circuit squarely addressed the accrual of an inmate's claim for deliberate indifference to medical needs. Judge Posner explained:

> The district court thought that the statute of limitations began to run as soon as the plaintiff discovered that he had a medical problem that required attention.... This would be correct if the suit were for medical malpractice.... But it is not.... instead the suit charges that the defendants inflicted cruel and unusual punishment on the plaintiff by refusing to treat his condition.

> This refusal continued for as long as the defendants had the power to do something about his condition.... Every day that they prolonged his agony by not treating his painful condition marked a fresh infliction of punishment that caused the statute of limitations to start running anew. A series of wrongful acts creates a series of claims.

*Id.*, **253 F.3d at 318-19.** Therefore, the Seventh Circuit reversed the District Court's holding that the action was barred by the two-year statute of limitations. *Id.* **at 320.**

Applying that reasoning to the allegations of deliberate indifference in the instant case, the Court concludes (as did Magistrate Judge Frazier) that Marion's cause of action accrued when he had notice of his untreated condition and ended (i.e., the alleged violation was complete) when Marion was provided the orthopedic shoes on November 17, 2004.

Marion filed suit within two years of that date. He signed his complaint October 10, 2006, and it was filed here on October 16, 2006. The undersigned District Judge rejects Marion's argument that the correct starting date for the two-year limitations period is the date he saw the orthopedic specialist (Dr. Gitersonke, October 17, 2004). The only claim properly before this Court is Marion's deliberate indifference claim based on the soft shoe permit. That claim was timely filed within the two-year window which commenced to run on November 17, 2004.

Judge Frazier rightly stated that deliberate indifference to a serious

medical need is a continuing violation which accrues when the inmate has notice of the untreated condition and ends when treatment is provided (or the inmate is released from prison)(Doc. 39, p. 3).  The statue of limitations commences anew each day the requested treatment is withheld.  *Heard*, **253 F.3d at 318.**   This action was filed within the two-year limitations period, so Defendants are not entitled to summary judgment on that ground.

    D.    <u>Conclusion</u>

The undersigned Judge **ADOPTS in part and REJECTS in part** Judge Frazier's Report (Doc. 39).  The Report is adopted in all respects save one.  To the extent that Judge Frazier construed Marion's complaint as presenting a broad deliberate indifference claim for "treatment of a foot ailment," all of which was exhausted, the undersigned Judge disagrees.  Marion's complaint advances two deliberate indifference claims – one for failure to promptly provide "soft" shoes, the other for failure to provide an examination by a "foot doctor."  Marion fully exhausted the former claim but not the latter claim.  Still the undersigned Judge reaches the same ultimate conclusion as Judge Frazier on the pending motion.  The Court **DENIES** Defendants' motion for summary judgment (Doc. 33) as follows.

Pursuant to the PLRA and based on lack of exhaustion, the Court **DISMISSES without prejudice** Marion's deliberate indifference claim relating to examination/treatment by a doctor.  The Court denies Defendants' motion

for summary judgment on that claim, because *without prejudice dismissal* is the appropriate remedy.

Additionally, the Court denies Defendants' summary judgment motion on the remaining claim herein, Marion's deliberate indifference claim based on the refusal to provide (or delay in providing) soft shoes. That claim was filed within the two-year limitations period. Following entry of this Order, that claim alone is what remains for disposition.

The parties are reminded of the deadlines contained in the Scheduling and Discovery Order herein, including the March 20, 2009 discovery deadline. The undersigned District Judge anticipates that, once those deadlines have elapsed, Magistrate Judge Frazier will conduct a final pretrial conference and certify this matter ready for trial.

IT IS SO ORDERED.

DATED this 3rd day of March 2009.

s/ ***Michael J. Reagan***
MICHAEL J. REAGAN
United States District Judge
